[L. A. No. 2430.    Department Two.—September 6, 1910.]

## FIRST NATIONAL BANK OF COVINA et al., Respondents, v. RUDDOCK COMPANY et al., Defendants; C. H. RUDDOCK, Appellant.

SUBSCRIPTION NOTE FOR RIGHT OF WAY FOR RAILWAY—DESIGNATION OF ROUTE.—A promissory note, executed to a member of a citizens' right of way committee, and reciting that it was given to defray the cost of securing the right of way for the "Covina extension of the Pacific Electric Railway," did not definitely fix a route by which such extension should be made, and the question of what was the meaning of these terms in the note was one of fact to be determined from all the circumstances surrounding its execution.

ID.—EVIDENCE AS TO LOCATION OF ROUTE.—The evidence is sufficient to sustain the finding that the phrase "Covina extension of the Pacific Electric Railway," was used in the note as a mere matter of convenience to indicate an extension of an electric railway from the city of Los Angeles to the city of Covina over a right of way to be subsequently procured by the company between those points, and upon which an electric road would be constructed.

ID.—CONDITION AS TO BUILDER OF ROAD.—The subscription note did not in terms require that the extension should be built by the Pacific Electric Railway Company. If, however, it was a condition of the note that it should be so built, the fact that it was built by a company, all the stock of which was owned by that railway, and was operated as a part of its electric railway system, was a sufficient compliance therewith.

ID.—CONSIDERATION FOR SUBSCRIPTION—TERMINUS OF ROUTE.—Both the terms of the subscription note, and the other evidence, support the finding that the note was not given in consideration of the extension being built beyond Covina, to a tract of land owned by the defendant.

ID.—WAIVER OF COMPENSATION FOR RIGHT OF WAY.—Conceding that an oral agreement of the maker of the note to waive compensation for damages for the right of way through his lands was not binding upon and might have been repudiated by him, the fact that he carried out his promise to relinquish any claim therefor by actually conveying the right of way, constituted a confirmation of his original waiver to compensation, and precluded him from asserting any claim for it.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. George H. Hutton, Judge.

The facts are stated in the opinion of the court.

Stephens & Stephens, and D. K. Trask, for Appellant.

Gibson, Trask, Dunn & Crutcher, for Respondents.

LORIGAN, J.—Plaintiff, as assignee of a body constituting the Citizens' Right of Way Committee of the city of Covina, brought this action against the defendant Charles H. Ruddock to recover on two promissory notes executed by him to the committee and recovered judgment thereon, and from said judgment and a denial of his motion for a new trial, said Ruddock appeals.

It appears that a large number of persons whose property and personal interests in and about the city of Covina would be benefited and advanced by the construction of an electric road which would connect the city of Los Angeles with the city of Covina, appointed a committee whose duty it should be to obtain the construction of such a line, and to that end secure the necessary funds and procure a right of way over which the said electric road to Covina should be constructed.

The defendant Ruddock, along with many others, executed notes to the treasurer of the committee to defray the expense of such right of way, the main inducement for their execution being the benefits which would accrue to their lands by reason of the construction and operation of an electric road between the two cities.

Ruddock, in aid of such purpose, executed the two notes sued on, one of which is as follows:—

"Covina, Cal., March 25th, 1903.

"For value received I promise to pay upon demand to F. M. Douglass of the Citizens' Right of Way Committee, the sum of $3097.75 to defray the cost of securing the right of way for the Covina extension of the Pacific Electric Railway.

"Ruddock Company,

"By C. H. Ruddock."

The other note was similar in tenor to the first but for the sum of $2377.50 and dated April 28, 1903.

The proceeds of all the notes secured by the committee were to constitute a fund to procure a right of way which when procured, was to be given free to the railroad company con-

structing said railroad as soon as an electric railway should be constructed and put into operation between said cities of Los Angeles and Covina.

Within the time agreed on for the construction of the said road the committee procured that portion of the right of way necessary to be procured by them, which was between Vineland and Covina, and through their efforts a corporation known as the Los Angeles Interurban Railway Company constructed an electric road of modern design and with modern appliances and equipment and operated by electricity, which, since its construction, has been continuously operated by the Pacific Electric Railway Company, over the right of way procured by the said committee, and from said city of Los Angeles through Vineland to the city of Covina.

The notes executed by Ruddock were assigned to plaintiff and the former having failed to make payment on demand this action was brought to recover on them.

While the notes are signed by the Ruddock Company by C. H. Ruddock, they were so signed because at the time of the signing a corporation to be composed of the members of the Ruddock family owning lands in the vicinity of the contemplated extension of the electric road was under contemplation. The formation of this corporation was abandoned and it is conceded by the defendant appellant that if any liability on the notes exists he is personally liable thereon. Several defenses were interposed by the defendant, all of which were held untenable by the trial court, and in this it is insisted that the court erred.

The first defense interposed by him was that by the terms of his subscription notes his payments were to be in aid of the extension of an electric road to Covina to be constructed by the Pacific Electric Railway, which meant the Pacific Electric Railway Company, which was then an organized corporation engaged in the construction of an extended system of railways radiating from the city of Los Angeles, and which, when the note was signed, had an electric line operating from Los Angeles to San Gabriel, from which point appellant claims "the Covina extension" was to be made. It is insisted, first, that his subscription being made in relation to an extension by a specified railroad—the Pacific Electric Railway Company—without any provision for its successors or assigns—the acceptance

of the subscription and the performance of the conditions by the company which constructed the road, namely, the Los Angeles Interurban Company, does not bind the defendant as subscriber unless he consented to them which he did not, and second, that the extension was not built from San Gabriel to Covina as agreed.

As far as the point is made that a particular extension of the route from San Gabriel to Covina was stipulated for it is apparent that the subscription notes had no reference to any route at all. It is undoubtedly true that when the subject of connecting the city of Covina with Los Angeles, a distance of nineteen miles, was first agitated, the residents of Covina and vicinity had in contemplation an extension of the electric road then operated by the Pacific Electric Railway Company as far as San Gabriel, and contemplated an extension from the latter place through Covina and beyond, including possibly Pomona and Riverside. But in the subscription notes there is nothing specifically requiring that any particular extension route shall be taken. As far as the right of way committee and the residents in the vicinity of Covina, in whose behalf and their own the committee was acting, no definite action was taken at all as far as selecting a route is concerned, until after these subscription notes were secured. It is quite apparent from the evidence in the case that what the Covina people wanted was an electric road which would put them in communication with the city of Los Angeles, and at the time the notes were secured by the committee, of which the defendant was a member, no route had been fixed upon or any arrangement made with any company relative to any definite route. In fact, until the route was finally selected upon which the electric road was built, several routes were under contemplation. It was realized that the selection of a route, if an electric company could be prevailed on to build at all, would be a matter to be taken up with the constructing company and the route to be selected would be left largely, if not entirely, to that company. So these matters were left entirely to the right of way committee. When the committee consulted with Mr. H. E. Huntington, president of the Pacific Electric Railway Company, he assured them that he would build an electric road to Covina if he was given a free right of way. No assurances were made by him as to what route would be followed. The matter was for ar-

rangement between the committee and Mr. Huntington. The latter did not make the offer as representing the Pacific Electric Railway Company of which he was president or the Los Angeles Railway Company of which he was also president. It did not purport to be the offer of any company, but of Mr. Huntington personally. All that the residents of Covina were solicitous about—referring now more particularly to those who signed subscription notes—was that there should be constructed a direct electric line between Los Angeles and Covina. This is all they were interested in and this is what they secured.

There being nothing in the expression "Covina extension of the Pacific Electric Railway" definitely fixing a route by which such extension should be made, the question of what was the meaning of these terms in the subscription notes was a question of fact to be determined from all the circumstances surrounding their execution. (*First Nat. Bank* v. *Bowers,* 141 Cal. 253, [74 Pac. £56].)

Evidence was addressed to the proposition and the trial court found that this phrase "Covina extension of the Pacific Electric Railway" was used in the subscription notes as a mere matter of convenience to indicate an extension of an electric railway from the city of Los Angeles to the city of Covina over a right of way to be subsequently procured by the company between those points, and upon which an electric road would be constructed and this finding is sustained by the evidence.

As to the proposition that by the terms of the subscription notes the road was to be built by the Pacific Electric Railway Company.

The notes themselves contain no such provision. No company is named and there is no agreement that the extension would be built by any company at all. It is true that when the proposition was first considered by the residents and the right of way committee, it was contemplated that the road would be extended, as we have said, from San Gabriel, to which point the Pacific Electric Railway Company had built its road, on to the city of Covina and that it would probably be built by the Pacific Electric Railway Company. The committee assumed that if an extension was built, the extension would probably be made from San Gabriel as it would be more economical to build from that place to Covina than to build

an independent line from Los Angeles to Covina. But as it is conceded that when the notes were executed no arrangement or agreement with any railroad company to build the extension had been made, this probably affords the reason why no constructing company was mentioned in the notes. In fact, it is obvious from the terms of the subscription notes and the entire circumstances surrounding their execution that it was really a matter of no moment who should build the road or over what route it should be constructed. The main object to be attained was to connect the city of Covina with the city of Los Angeles by a direct route and as long as this end was accomplished, it was immaterial who actually constructed the road. The desired end would be attained as well by having it built by one company as by another. The main and controlling purpose being to have the road built probably accounts for the absence of any specified route or the mention of any constructing company. The success of the project and the method of its accomplishment were to be left to the judgment of the right of way committee and the form of the subscription notes was drafted so as to interfere the least with their judgment and without any limitations attending the payment of the subscriptions save that they should be applied to obtaining the right of way and having an electric railroad constructed thereover between the city of Los Angeles and the city of Covina.

But if it can be said that the subscription notes of the defendant provided in effect, though they did not in terms, that the railroad was to be constructed by the Pacific Electric Railway Company, it is apparent from the findings, which are supported by the evidence, that the road was in reality built by that electric company.

After the committee secured subscription notes sufficient in its judgment to furnish a fund to purchase a right of way for the contemplated road, it entered into negotiations with H. E. Huntington, president of the Pacific Electric Railway Company, to have an electric road constructed. The matter was taken up personally with him and, as we have said, there was not until then any arrangement between the committee and any railroad company or individual for the construction of the road. The arrangement was with Huntington and simply amounted to an agreement that if the committee ob-

tained a free right of way he would have the road built. They secured the right of way and he caused the railroad to be constructed and equipped by the Los Angeles Interurban Company. When the road was built by this company the right of way was conveyed to it. At the time the Los Angeles Interurban Company constructed it, the Pacific Electric Railway Company was the owner of all the capital stock of the Los Angeles Interurban Company and had guaranteed a payment of its bond issue amounting to ten million dollars. Under these circumstances, as the Pacific Electric Railway Company was the sole owner of all the stock of the Los Angeles Interurban Company, the road necessarily was built at the expense of the former company. After its completion it was actually operated, and upon the trial of this action was being operated, from Los Angeles to Covina by the Pacific Electric Railway Company. While it is true that these respective corporations are distinct and separate entities, as a matter of fact they constitute but one company, the Pacific Electric Railway Company, which actually built, or caused to be built, "the Covina extension," and is operating it as an integral part of its entire system of electric railways. This being true, it appears to us that if it should be assumed that the Pacific Electric Railway Company was by the terms of the subscription notes to build the road, this condition has been actually met.

This disposes of the main 'defense interposed by defendant against his liability upon the notes.

As a further defense it is claimed by defendant that the notes were also given in consideration of the railroad being built beyond Covina, to a tract of land owned by defendant to the east thereof, which was not done. The court found that there was no merit in this claim, as there was no agreement to that effect. This finding is supported by the terms of the subscription note itself. There is nothing in it calling for an extension beyond Covina. The phrase "Covina extension of the Pacific Electric Railway" quite naturally implies simply an extension *to* the city of Covina. It could not reasonably be construed as an extension *beyond* it. It is apparent too from the evidence in the case, as far as it was addressed to ascertaining the meaning of the terms used in the subscription note that when the project of obtaining an extension to Covina was first contemplated, the matter of having the road run

through Covina to Riverside was under consideration. It appears, however, that no immediate assistance could be obtained along the route beyond Covina to Riverside so that project was early abandoned and long before the notes were given and the efforts of the residents of Covina and of the committee were thereafter concentrated solely towards securing an extension to Covina alone.

Defendant further claimed that a deduction to the extent of $3369 for land taken as part of the right of way through his land should have been allowed him as an offset against the claim on his notes. The right of way committee in determining the amount which should be allowed the persons through whose land the right of way for the railroad should be acquired fixed amounts to be allowed as compensation to defendant and others for rights of way through their lands. The evidence discloses that about the time Ruddock and the other subscribers to the fund to procure a right of way executed their notes it was agreed that the entire amount of the subscription should be placed in a fund to defray the expense of securing a right of way between Vineland and Covina, including the Ruddock portion of the right of way. Ruddock was an active and energetic member of the right of way committee and a strong advocate of the contemplated extension of the electric road to Covina as he and his family owned some seven hundred acres of land in its vicinity which would be prospectively enhanced in value by the construction of the road. Subsequent to the fixing by the committee of the amount of compensation to be paid to the defendant and about the time of the execution of his notes he declared to the committee with which he was in conference that he wanted no compensation for the Ruddock right of way, but would waive his right to any compensation therefor and grant the right of way free in addition to giving the amounts represented by his notes. Thereafter the Ruddock family with the defendant conveyed their lands in the vicinity of Covina through which the right of way was to run to the United Investment Company, the majority of the capital stock of which they held, and which company, in accordance with the promise made by said Ruddock and by his authority and at the request of the committee, conveyed the right of way for said electric road to the Los Angeles Interurban Company which constructed it. Conceding that the

oral agreement of Ruddock to waive his compensation for damages for the right of way was not binding upon him and he might have repudiated it, still having carried out his prior promise to relinquish any claim therefor by actually conveying the right of way, this constituted a confirmation of his original waiver to compensation and precluded him from asserting any claim for it.

It is strenuously insisted by his counsel that no such promise was made by Ruddock and that the conveyance executed to the Los Angeles Interurban Company was obtained by fraud practiced on the officers of the United Investment Company making the conveyance. The evidence is quite full and clear as to the promise to waive compensation for the right of way and to donate such right, together with the sums represented by the notes, and there was sufficient, though it may be conceded not as clear evidence that the conveyance was made by the company with his sanction and in conformity to his promise.

While we have disposed of this appeal on the merits, we have not overlooked various points made by appellant for a reversal consisting of alleged error in overruling the demurrer of appellant to the complaint, in denying his motion for a nonsuit, and in certain rulings on evidence.

We have fully considered these matters but perceive no error in any rulings of the court respecting them.

The judgment and order appealed from are affirmed.

Henshaw, J., and Melvin, J., concurred.

Hearing in Bank denied.

Beatty, C. J., dissented from the order denying a hearing in Bank.